**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NORMENT SECURITY GROUP, INC.,
3224 Mobile Highway
Montgomery, Alabama 36108,

Plaintiff,

v.

PCC CONSTRUCTION COMPONENTS, INC.,
20312 Market Tree Place
Gaithersburg, Maryland 20879

Serve: The Corporation Trust Incorporated
300 E. Lombard Street
Baltimore, Maryland 21202,

Defendant.

Civil Action No. ____________

**APPLICATION FOR ORDER CONFIRMING ARBITRATION AWARD**

Norment Security Group, Inc. ("Norment"), by counsel, and pursuant to Sections 9 and 13 of Title 9 of the United States Code, moves the Court for an order confirming an arbitration award, and states as follows:

**Parties**

1. Norment is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business located in Montgomery, Alabama.

2. PCC Construction Components, Inc. ("PCC") is a corporation organized and existing under the laws of the State of Maryland, with its principal office and place of business located in Gaithersburg, Maryland.

**Jurisdiction and Venue**

3. Jurisdiction over this action is proper in this Court pursuant to Section 9 of Title 9 and Section 1332(a)(1) of Title 28 of the United States Code.

4. Venue for this action lies properly in this Court pursuant to Section 9 of Title 9 and Section 1391(a)(2) of Title 28 of the United States Code.

**Facts**

5. On or about April 10, 2002, Centex Construction Co., Inc. ("Centex") was awarded a contract to construct the E. Barrett Prettyman Courthouse Annex for the United States District Court for the District of Columbia (the "Project") located in Washington, District of Columbia. Centex, in turn, entered into a subcontract agreement with PCC whereby PCC was to provide glass and glazing services for the Project.

6. On or about May 1, 2002, PCC entered into a Purchase Order Agreement ("Purchase Order") with Norment whereby Norment agreed to furnish blast/ballistic resistant exterior windows for the Project. The Purchase Order contained a provision requiring the parties to resolve any disputes arising under the Purchase Order or involving services and materials supplied for the Project through arbitration. A true and correct copy of the Purchase Order is affixed hereto as Exhibit A.

7. Norment furnished the windows pursuant to the Purchase Order. In addition, Norment provided additional services and materials for the Project as requested and authorized by PCC.

8. PCC refused to pay Norment in full, claiming set offs and charges due to Norment's alleged failure to provide satisfactory service and materials.

9. Norment and PCC were unable to resolve their disputes and, on April 6, 2005, Norment initiated arbitration proceedings through the American Arbitration Association ("AAA"), Case No. 16-110-Y-02255-05.

10. Prior to the final arbitration hearing, the parties reached a settlement regarding some of the issues in dispute. On June 2, 2006, Norment and PCC memorialized their settlement by executing the Agreement for Consent Award and Mutual Partial Releases ("Agreement").

11. Pursuant to the Paragraph 1 of the Agreement, PCC acknowledged that the Purchase Order balance owing to Norment is $432,187.11.

12. Pursuant to Paragraph 8 of the Agreement, PCC acknowledged that Norment is entitled to $64,602.86 for the additional work authorized by PCC and provided by Norment for the Project.

13. Pursuant to Paragraph 13 of the Agreement, PCC agreed that the Arbitration Panel should enter an award of final judgment in favor of Norment in the amount of $496,489.97 representing the amounts owed to Norment pursuant to the Purchase Order and the additional work performed by Norment for the Project.

14. On July 11, 2006, the Arbitration Panel entered the Award of Arbitrators adopting the Agreement and awarding Norment $496,489.97 (the "Arbitration Award"). A true and correct copy of the Arbitration Award and Agreement is affixed hereto as Exhibit B.

15. The sum of $496,489.97 awarded to Norment has not been paid.

16. The Arbitration Award is binding and non-appealable by PCC.

17. PCC has not sought to vacate, amend or otherwise modify the Arbitration Award.

WHEREFORE, Norment Security Group, Inc., Plaintiff, respectfully requests that the Arbitration Award be confirmed and that judgment be entered in its favor and against PCC Construction Components, Inc., Defendant, in the amount of $496,489.97, interest from and after July 11, 2006 at the rate of 10% per annum, and court costs; and for such other and further relief as may be proper.

Respectfully submitted,

Richard E. Hagerty, D.C. Bar No. 411858
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA 22102
703.734.4334 (telephone)
703.734.4340 (facsimile)

Tameka M. Collier, D.C. Bar No. 488979
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
202.274.2950 (telephone)
202.274.2994 (facsimile)

*Counsel for Plaintiff*

*1038384*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NORMENT SECURITY GROUP, INC.,
3224 Mobile Highway
Montgomery, Alabama 36108,

Plaintiff,

v. Civil Action No. ____________

PCC CONSTRUCTION
COMPONENTS, INC.,
20312 Market Tree Place
Gaithersburg, Maryland 20879

Serve: The Corporation Trust Incorporated
300 E. Lombard Street
Baltimore, Maryland 21202,

Defendant.

**NOTICE OF APPLICATION FOR ORDER**
**CONFIRMING ARBITRATION AWARD**

To: PCC CONSTRUCTION COMPONENTS, INC.,
Serve: The Corporation Trust Incorporated
300 E. Lombard Street
Baltimore, Maryland 21202

Please take notice that, upon the Award of Arbitrators dated July 11, 2006, in the arbitration proceeding between Norment Security Group, Inc. and PCC Construction Components, Inc, and the agreement for arbitration contained in the Purchase Order dated May May 1, 2002, the undersigned will move this court for an order:

1. Confirming the Award of Arbitrators;

2. Directing that judgment be entered thereon; and

3. Awarding such other and further relief as may be just, together with the cost of this motion.

Richard E. Hagerty, D.C. Bar No. 411858
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA 22102
703.734.4334 (telephone)
703.734.4340 (facsimile)

Tameka M. Collier, D.C. Bar No. 488979
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
202.274.2950 (telephone)
202.274.2994 (facsimile)

*Counsel for Plaintiff*

**PCC CONSTRUCTION COMPONENTS INC.**
7950 CESSNA AVENUE
GAITHERSBURG, MD 20879
(301) 417-1020 (301) 417-1020 facsimile

# PURCHASE ORDER

PO Number: 72-0027-01

SUPPLIER: Norment Security Group
3224 Mobile Highway
Montgomery, Alabama 36108-4454

Date: May 1, 2002

Project No. 72-0027

Project: E. Barrett Prettyman Courthouse, Washington DC

Price: $ 2,298,000.00 (Two Million, Two hundred ninety eight thousand dollars)

## A. Scope of Work

Norment (Hereinafter "SUPPLIER") shall perform all work and shall furnish all engineering, material, supplies and all other things necessary for the completion of the work described in Exhibit B, in strict accordance and full compliance with the terms of the contract documents (as referenced in Exhibit A) NORMENT PROPOSAL DATED DECEMBER 14, 2001, and this Purchase order to the satisfaction of PCC Construction Components, Inc. (hereinafter "PCC").

## B. General Provisions

1. Supply Bond:

a. A Supply bond is required, PCC will make payment directly to the Surety upon receipt of an invoice from the supplier.

2. Payment:

a. PCC shall pay SUPPLIER for performance of the work subject to additions and deductions by change order. ~~the sum of cents.~~

b. Net 45 days.

3. Time of Performance:

TIME IS OF THE ESSENCE. SUPPLIER shall proceed with the work in a prompt and diligent manner, in accordance with the dates set forth in Exhibit "B".

4. Changes:

a. PCC may by agreement with SUPPLIER make changes in the work covered under this Purchase order. SUPPLIER shall perform the work as changed without delay.

b. SUPPLIER shall within seven (7) days of a PCC request submit a reasonable price quotation for proposed changes.

c. Payment on account of pending changes shall be made to SUPPLIER if PCC receives such payment from the General Contractor for SUPPLIER's changed work. Amounts paid on account of pending changes are provisional and not an admission of liability and shall be repaid to PCC on demand whenever PCC determines there has been an overpayment.




*"There is no substitute for Performance!"*



d. No alterations or changes shall be made in the work described herein except upon written order of PCC; and when so made the value of the work and materials added or omitted shall be computed and determined by SUPPLIER and PCC and such determined value shall be added to or deducted from the contract price by change order issued by PCC. No claims for additional compensation shall be considered or paid unless made in compliance with this paragraph and authorized in writing before the work is started. Additional charges will be paid in accordance with the Payment Terms of this agreement.

5. Failure to Perform:

a. If SUPPLIER fails to comply with any provision of this Purchase order or the contract documents, then, after serving three (3) business days written notice, unless the condition specified in such notice is eliminated within such ten (10) business days, PCC, at its option, without voiding the other provisions of this Purchase order, may take steps as are necessary to overcome the condition, in which case SUPPLIER may be liable for the cost of such steps.



6. Warranty:

SUPPLIER warrants the system(s) on the same terms and the same period set forth in the contract documents, SUPPLIER shall assume all warranty obligations and responsibilities of PCC and General Contractor under the Contract Documents. If SUPPLIER fails to perform warranty work per the contract documents, PCC will respond under the provisions of the warranty and backcharge SUPPLIER for costs incurred.

7. Liens:

a. SUPPLIER shall, as part of each request for partial payment other than the initial request, furnish claim releases and lien waivers with respect to all work completed through the date of the immediately preceding request for partial payment

b. Prior to final payment, SUPPLIER shall provide to PCC a release of its liens and claims and all liens and all claims of all persons furnishing labor and/or materials for the performance of this Purchase order.

8. SUPPLIER's Liability:

a. Should there be a conflict between the Base Contract documents or any other document referred to in this Agreement This Agreement will Govern.

b. The terms and provisions herein constitute the entire agreement between the parties and shall supercede all previous communications, representations or agreements, either oral or written, between the parties with respect to the work described herein.







9. Claims:

a. All claims, disputes, and other matters in question arising out of or relation to this agreement or the Breach, thereof shall be settled by arbitration. Such arbitration shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Arbitration must be requested, in writing, no later than sixty (60) days after notice of a claim or dispute has been delivered by the claimant. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. All arbitration hearings will be conducted in Montgomery County, Maryland.

C. Special provisions

~~a. Since engineering is required, include E&O insurance binder number~~

b. Purchase order price does not include sales tax. Project is tax exempt.

c. Unless otherwise noted, the Purchase order price is inclusive of all labor, material, freight, equipment, engineering, management, overhead, profit, patents, royalties, and all other costs associated with performing the work of this Purchase order

d. All deliveries to the job site must be scheduled 48 hours in advance.

| | |
|---|---|
| For: Norment Security Group | For: PCC Construction Components, Inc |
| By: David Wach (An Officer of the Company - Name & Title) | By: [signature] Keigh Press, Executive Vice President |
| Date: 6/17/02 | Date: 6/12/02 |
| WITNESS | WITNESS |
| Attested: Judy Meyon | Attested: [signature] |
| Date: 6-17-02 | Date: 6/12/02 |
| This Document was executed before me on this 17 Day of June 2002, By David Wach of President/Norshield (SUPPLIER) | This Document was executed before me on this 12th Day of June, 2002 By Leigh Press of PCC Construction Components (SUPPLIER) |
| My commission expires: November 30, 2003 | My commission expires: 5/1/05 |
| Aretha Terrance Webster Notary Public | Marvin E. Harrington Notary Public |

SUPPLIER Affix Notary Stamp Here

PCC Affix Notary Stamp Here

"There is no substitute for Performance!"

INITIALS
SUPPLIER
PCC

AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION TRIBUNAL

In the Matter of the Arbitration between

NORMENT SECURITY GROUP, INC.
(Claimant)
And
PCC CONSTRUCTION COMPONENTS, INC.
(Respondent)

Case No. 16 110 Y 0255 05

## AWARD OF ARBITRATORS

WE, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and having been duly sworn, and the parties having reached a settlement of their dispute, hereby make the terms set forth in that settlement dated June 02, 2006, our Award,

We adopt the Agreement for Consent Award and Mutual Partial Release, executed by the parties under date of June 2, 2006, a copy of which is appended hereto, incorporated by reference herein and made a part hereof, as Attachment A.

Accordingly, Respondent PCC forthwith shall pay to Claimant Norment the principal amount of FOUR HUNDRED NINETY-SIX THOUSAND FOUR HUNDRED EIGHTY-NINE and 97/100 DOLLARS ($496,489.97).

The parties shall each bear their own costs, including attorneys' fees, in connection with this arbitration.

The administrative fees and expenses of the American Arbitration Association totaling $8,000.00 shall be borne entirely by Normant Security Group, Inc, and the compensation and expenses of the neutrals totaling $14,689.50 shall be borne equally.

This Award is in full settlement of all claims submitted to this arbitration.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Dated:__________ 20____

Alan H. Kent, Arbitrator

Dated:__________ 20____

Julian F. Hoffar, Arbitrator

Dated: 10 July 2006

Gregory Beckwith, Arbitrator

Attachment (copy of Agreement for Consent Award, June 2, 2006)

EXHIBIT
tabbies
B

AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION TRIBUNAL

In the Matter of the Arbitration between

NORMENT SECURITY GROUP, INC.
(Claimant)
And
PCC CONSTRUCTION COMPONENTS, INC.
(Respondent)

Case No. 16 110 Y 0255 05

**AWARD OF ARBITRATORS**

WE, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and having been duly sworn, and the parties having reached a settlement of their dispute, hereby make the terms set forth in that settlement dated June 02, 2006, our Award,

We adopt the Agreement for Consent Award and Mutual Partial Release, executed by the parties under date of June 2, 2006, a copy of which is appended hereto, incorporated by reference herein and made a part hereof, as Attachment A.

Accordingly, Respondent PCC forthwith shall pay to Claimant Norment the principal amount of FOUR HUNDRED NINETY-SIX THOUSAND FOUR HUNDRED EIGHTY-NINE and 97/100 DOLLARS ($496,489.97).

The parties shall each bear their own costs, including attorneys' fees, in connection with this arbitration.

The administrative fees and expenses of the American Arbitration Association totaling $8,000.00 shall be borne entirely by Normant Security Group, Inc, and the compensation and expenses of the neutrals totaling $14,689.50 shall be borne equally.

This Award is in full settlement of all claims submitted to this arbitration.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

Dated: July 11 2006 — Alan H. Kent, Arbitrator

Dated: July 11 2006 — Julian F. Hoffar, Arbitrator

Dated: ________ 20____ — Gregory Beckwith, Arbitrator

Attachment (copy of Agreement for Consent Award, June 2, 2006)

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION

NORMENT SECURITY GROUP, INC.

Claimant and Counter-Respondent,

and

PCC CONSTRUCTION COMPONENTS, INC.

Respondent and Counter-Claimant.

AAA Case No. 16-110-Y-02255-05

## AGREEMENT FOR CONSENT AWARD AND MUTUAL PARTIAL RELEASES

This Agreement for Consent Award and Mutual Partial Releases is made this 2nd day of June 2006 by and between Norment Security Group, Inc. ("Norment") and PCC Construction Components, Inc. ("PCC").

WHEREAS, on or about April 10, 2002, Centex Construction Co., Inc., ("Centex") entered into a written contract with the United States of America, acting by and through the General Services Administration, for the construction of the E. Barrett Prettyman Courthouse Annex ("Project") located at Third Street and Constitution Avenue N.W, in Washington, D.C.

WHEREAS, on April 10, 2002, PCC entered into a written subcontract agreement with Centex to provide the "Glass & Glazing" for the Project;

WHEREAS, on May 1, 2002, PCC entered into a written Purchase Order Agreement ("Purchase Order") with Norment to furnish the Blast/Ballistic Resistant Exterior Windows ("Windows") for the Project;

219



WHEREAS, Norment supplied the windows for the Project;

WHEREAS, Norment has not been paid the balance of its contract or for approved change orders and extra work;

WHEREAS, PCC withheld payment from Norment and assessed Norment with backcharges equal to or exceeding Norment's contract balance;

WHEREAS, the parties desire to, among other things, resolve payment issues between them; and,

WHEREAS, the parties desire to express herein their respective agreements concerning these matters;

NOW THEREFORE, in consideration of the promises and agreements of the parties hereto, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. PCC agrees that the contract balance owing to Norment is $432,187.11, calculated as follows:

| | | |
|---|---|---|
| Original Purchase Order | | $2,298,000.00 |
| Approved Change Orders | | |
| Alternate 1 | (35,000) | |
| Alternate 2 | 30,000 | |
| Alternate 2 | (7,000) | |
| Alternate 3 | 50,000 | |
| PRO0005-0024 | 2,047 | |
| COP 4 & 5 | 9,888 | |
| North Br. W18 Window COP #2 | 12,100 | |
| G Booth Door Swing CE-0134 | 4,788 | |
| Glass Replacement COP #6 | 33,122 | |
| Subtotal | | $ 99,945.00 |
| PCC Backcharges (see Exhibit "A") | | ($64,995.37) |
| Centex Backcharges | | (133,429.52) |



ma

| | |
|---|---|
| Revised Purchase Order | $2,197,520.11 |
| Paid to Norment | $1,765,333.00 |
| Contract Balance: | $432,187.11 |

2. Norment reserves the right to contest Centex's backcharges to PCC in the amount of $135,429.52 and Norment shall be entitled to claim and receive from Centex and its surety the amount of backcharges by Centex that Norment can demonstrate are not properly chargeable.

3. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, parent corporations, subsidiaries, and divisions from the following PCC claims and backcharges:

| | | |
|---|---|---|
| (a) | Mockup Deductive CO 01 | $ 62,213.00 |
| (b) | Norment's added deliveries DCO 04 | $ 26,800.00 |
| (c) | Late/out of sequence DCO 05 | $ 3,067.00 |
| (d) | Staging DCO 02 | $ 1,600.00 |
| (e) | Staging DCO 03 | $ 1,958.00 |
| (f) | Staging DCO 04 | $ 3,659.00 |
| (g) | Staging DCO 05 | $ 2,090.00 |
| (h) | DCO 04 Testing windows | $ 712.98 |
| (i) | DCO 05 Testing windows/rework | $ 5,731.00 |
| (j) | DCO 06 Testing windows 04 June 04 | $ 3,495.75 |
| (k) | N&S Atrium steel PCC refab errors | unpriced |



979

| | | |
|---|---|---|
| (l) | W6-2-2 window removal and replacement | $ 5,400.00 |
| (m) | Load of mis-fab windows for return to NSG | $ 1,578.00 |
| (n) | Disassemble & removal of window for rework | $ 849.00 |
| (o) | Northbridge windows head angle holes | unpriced |
| (p) | Northbridge W188-6 3&4 jamb angles | unpriced |
| (q) | Northbridge missing angles | unpriced |
| (r) | PCC backcharges for stud wall removal and replacement dated 1/13/05 | $ 5,735.00 |
| (s) | PCC backcharges for delay in precast erection due to windows stored on control lines dated 1/24/05 | $ 946.52 |
| (t) | PCC backcharges for stud wall removal and replacement dated 1/26/05 | $ 4,011.00 |

4. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, parent corporations, subsidiaries, and divisions from any and all other actions, causes of actions, liabilities, claims, damages, debts, and demands of every kind and nature whatsoever, whether sounding in contract or tort, known to PCC, related to or arising out of the Project, the Purchase Order, or Norment's work, except that PCC hereby reserves the following claims and/or backcharges:

(a) On March 3, 2004, Centex issued Change Order No. 0006 to PCC in the amount of $115,000.00 as compensation for a time extension granted by the General Services Administration. PCC contends that it lost compensation for those delays in the amount of $68,158.00 due to delays in mockup testing caused by Norment.

(b) The General Services Administration granted Centex a second

extension of time of 88 days for which PCC has claimed delay costs of $80,253.85. PCC reserves the right to make a claim against Norment in the event PCC's change order request is denied or reduced due to delays caused by Norment.

(c) The claim against Norment set forth in PCC's letter to Norment dated December 15, 2004, in the amount of $526,246.00 (all other claims set forth in that letter are released and discharged).

(d) Any claim or claims that Centex may assert against PCC arising out of the work performed by Norment on the Project.

Norment denies that PCC or Centex (or its subcontractors) suffered any losses or damages as a result of Norment's performance, mockup testing, any late delivery of windows, or any corrective action taken to remediate its windows, and Norment hereby reserves all of its defenses to the claims reserved by PCC in above paragraphs (a) through (d).

5. Norment hereby releases and forever discharges PCC and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, subsidiaries, and divisions, from Norment's claim in the amount of $143,484.48 for material costs incurred by Norment when Norment changed the size and thickness (from 1/4" to 3/8") of its steel angles. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, subsidiaries, and divisions, from PCC's claim in the amount of $134,771.00 for trips made by PCC to Norment's facilities in Montgomery (Deductive CO 03).

6. PCC acknowledges that Norment is entitled to recover from Centex and/or its surety, Travelers Casualty and Surety Company ("Travelers"), the following Norment proposed and submitted change orders, and PCC hereby relinquishes to Norment, all of its rights, contractual and otherwise, to claim payment of such change orders by Centex and Travelers and to receive any and all funds from Centex and its surety to which PCC and/or Norment may be entitled to receive for the work performed and the labor and materials furnished by Norment related to these change orders:

| | |
|---|---|
| Norment CPO #1 | $28,171.00 |
| Norment COP #2 | $20,482.00 |
| Norment COP #3 | $ 7,046.19 |

If it is determined that CPO #1 was paid by Centex to PCC, Norment shall be entitled to an increase in the contract balance owed by PCC to Norment (and an increase in the judgment in favor of Norment and against PCC) in the amount of $28,171.00 (or any part thereof paid to PCC by Centex).

7. PCC agrees to support and assist and fully cooperate with Norment in the prosecution of its two Halfen Anchoring System-related claims against Centex and Travelers including but not limited to providing deposition and trial testimony. For this cooperation and assistance, PCC shall receive fifty percent (50%) of any net recovery on Norment's claim of $143,484.48 for the increase in the size and thickness (from 1/4" to 3/8") of the steel angle and thirty three and one-third percent (33 1/3%) of any net recovery on Norment's Embedment Claim of $373,423.36. "Net recovery" is hereby defined as any amount paid to Norment by settlement or by judgment on these claims less fifty percent (50%) of Norment's attorney's fees and litigation expenses attributable to these claims. Norment shall have the discretion to dismiss or withdraw this claim or to



974

settle this claim for an amount it deems fair and reasonable. Norment shall determine the "net recovery" on such claim. If PCC disputes Norment's determination of the "net recovery", it may submit the dispute to a single arbitrator agreed upon by the parties who shall decide the dispute. The decision of the arbitrator shall be binding on the parties. The parties shall share equally in the fees and expenses of the arbitrator.

8. PCC hereby agrees that Norment is entitled to the amount of $64,602.86 for extra work, which represents fifty percent (50%) of the following Norment claims for extra work:

(a) Norment's claim in the amount of $38,510.00 for costs incurred by Norment related to the AR windows (see 8/16/04 e-mail from Mike Mathis to Donald Deister);

(b) Norment's claims for replacement glass in the amount of $14,193.50 ($47,315.50-$33,122.00) (Norment COP #06BR2) and $1,952.50 (Norment's COP #09R1);

(c) Norment's claim in the amount of $73,949.71 for costs incurred by Norment for factory installation of the jamb angles at PCC's direction.

9. PCC hereby releases and forever discharges Norment and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, subsidiaries or divisions, from any and all actions, causes of actions, liabilities, claims, damages, debts, and demands of every kind and nature whatsoever, whether sounding in contract or tort, known or unknown to PCC, accrued or unaccrued, asserted or unasserted in this arbitration, that PCC may have against Norment related to the project known as the FDA "Shared Use Building".



mg

10. PCC acknowledges that Norment will seek recovery of its contract balance set out in above paragraph 1 in the amount of $432,187.11 and $64,302.86 for extra work as set forth in the above paragraph 8 in the pending Miller Act suit between Norment and Centex and its surety Travelers. This Agreement may not be used by PCC or Centex, or its surety Travelers, to defeat or deny recovery to Norment on its Miller Act claims or other claims asserted by Norment in that action. To the extent that this Agreement is used by any party to defeat or diminish Norment's claims in the Miller Act suit, this Agreement is null and void. Both PCC and Norment contemplate that Norment will be paid the amounts of $432,187.11 and $64,302.86 by Centex and/or its surety Travelers. Norment agrees not to otherwise pursue collection of these amounts against PCC until the conclusion of the Centex litigation and the Arch litigation. Norment consents to lift the stay in the Arch litigation and will so advise Arch.

11. This Agreement shall be binding not only in this Arbitration but in any and all other present or future arbitrations and other actions and proceedings between Norment and PCC and between Norment or PCC and any other party including but not limited to Arch Insurance Company and the action currently pending between PCC and Arch Insurance Company in the U.S. District Court for the District of Maryland, Civil Action No. RWT-05-CV-1758, in which Norment may interpose the final judgment entered pursuant to this Agreement as an affirmative claim, offset , or defense.

12. In the Centex Litigation, Centex has asserted Modern Mosaic's claim against Norment in the amount of $308,700.00. Norment denies that it has any liability to Centex, Modern Mosaic, or PCC related to this claim or any other claim of Modern Mosaic. Centex may assert the same Modern Mosaic claim against PCC. Both PCC and

Norment hereby expressly reserve any and all claims either may have against the other arising out of or related to the Modern Mosaic claim and any other claims asserted by Centex and reserve all defenses to such claims.

13. PCC agrees that that the Arbitration Panel in this case shall enter an award of final judgment in favor of Norment in the amount of $496,489.97, which shall be binding and non-appealable by PCC. Norment hereby releases and forever discharges PCC and its directors, officers, shareholders, employees, attorneys, insurers, re-insurers, sureties, successors, assigns, agents, parent corporations, subsidiaries, and divisions from any and all other actions, causes of action, liabilities, claims, damages, debts, and demands of every kind and nature whatsoever, whether sounding in contract or tort, known to Norment, and related to or arising out of the Project, the Purchase Order, or Norment's work.

14. The parties acknowledge that they have had the opportunity to consult legal counsel of their choosing, that they understand the terms of this Agreement, that no other promise or inducement has been made except as set forth herein, and that they signed this Agreement voluntarily. The parties acknowledge that this Agreement was the product of negotiations between the parties and agree that this Agreement was mutually drafted by the parties.

15. Should any portion of this Agreement be found unenforceable by a court of competent jurisdiction, such unenforceable portions shall be struck from the Agreement and the remainder of the Agreement shall continue in full force and effect.

16. Except as modified by this Agreement, the Purchase Order between Norment and PCC shall remain in full force and effect.

17. This Agreement supersedes all other verbal and written agreements concerning the same subject matter.

18. This Agreement shall be binding upon and inure to the benefit of the respective parties and all of their successors and assigns. This Agreement shall not inure to the benefit of third parties, other than lawful successors and assigns of the parties hereto.

19. The laws of the State of Maryland shall govern the interpretation and performance of this Agreement.

20. This Agreement may be executed in any number of counterparts and facsimile signatures shall be considered as originals.

IN WITNESS WHEREOF, the parties hereto have affixed their hands and seals in execution hereof this 2nd day of June 2006.

NORMENT SECURITY GROUP, INC.

Date: 06/02/06

By: [signature]
Its: Vice Pres Finance

PCC CONSTRUCTION COMPONENTS, INC.

Date: 2 JUNE 2006

By: [signature]
Its: President

STATE OF ALABAMA
COUNTY OF MONTGOMERY

I, HEATHER LYNN RAHN, a Notary Public in and for said county in said state, hereby certify that STAN SASSER, whose name as VICE PRES FINANCE of Norment Security Group, Inc., a corporation, is signed to the foregoing Agreement for Consent Award and Mutual Partial Releases, and who is known to be, acknowledged before me on this day that, being informed of the contents of the above and foregoing Agreement for Consent Award and



mg

Mutual Partial Releases, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date.

Given under my hand and official seal of office this the 2ND day of June, 2006.

[signature]
NOTARY PUBLIC
My commission expires: 7/19/08

STATE OF MARYLAND
COUNTY OF MONTGOMERY

I, Donald Deisten, ~~a Notary Public~~ Witness in and for said county in said state, hereby certify that Vito Germinario, whose name as President of PCC ~~Production~~ Construction Components, Inc., a corporation, is signed to the foregoing Agreement for ~~Consent~~ Award and Mutual Partial Releases, and who is known to be, acknowledged before me on this day that, being informed of the contents of the above and foregoing Agreement for Consent Award and Mutual Partial Releases, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date.

Given under my hand and official seal of office this the _____ day of June, 2006.

[signature] 02 June 06
~~NOTARY PUBLIC~~ WITNESS
My commission expires: ____________

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

NORMENT SECURITY GROUP, INC.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Montgomery, AL
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

TROUTMAN SANDERS LLP

Richard E. Hagerty
1660 International Drive, Suite 600
McLean, VA 22102
703.734.4334 (telephone)

Tameka M. Collier
401 9th Street, N.W., Ste 1000
Washington, D.C. 20004
202.274.2950 (telephone)

**DEFENDANTS**

PCC CONSTRUCTION COMPONENTS, INC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Gaithersburg, MD
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⦿ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ⦿ 5 | ⦿ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. *Antitrust***

- ☐ 410 Antitrust

**○ B. *Personal Injury/ Malpractice***

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. *Administrative Agency Review***

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. *Temporary Restraining Order/Preliminary Injunction***

**Any nature of suit from any category may be selected for this category of case assignment.**

***(If Antitrust, then A governs)***

**⦿ E. *General Civil (Other)*** **OR** **○ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Plaintiff seeks judgment confirming arbitration award pursuant to 9 U.S.C. § 9.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** 496,489.97 Check YES only if demanded in complaint **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

**DATE** 1/9/07 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.